## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

       vs.                                    Civ. No. 01-565- MV/ACT

ITEM 1:  1997 Chevrolet Pickup Truck,
             VIN 1GCHC33J9VF007596;

ITEM 2:  1993 Suzuki ATV,
             VIN LM4AC11A3P1100257;

ITEM 3:  1993 Chevrolet K15 Suburban,
             VIN 1GNFK16K3PJ371426;

ITEM 4:  1988 GMC Show Truck,
             VIN 2GTHC39N6J1563506;

ITEM 5:  1996 Yamaha ATV,
             VIN JY43FAA00TA089758;

ITEM 6:  1996 Yamaha ATV,
             VIN JY44KBA08TA026493;

ITEM 7:  1975 Porsche,
             VIN 9115200226;

       Defendants,

and

CHRISTOPHER BATES AND
MICHELLE BATES,

       Claimants.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on Claimants' Motion to Dismiss Forfeiture

Claim, filed January 16, 2002, **[Doc. No. 15]**, Claimants' Second Motion to Dismiss Forfeiture

Claim, filed April 7, 2004, **[Doc. No. 18]**, and Plaintiff's Motion for Summary Judgment

Regarding the Right, Title, and Interest of Claimants Chris Bates and Michelle Bates (Items 1

Through 6), filed April 28, 2003, **[Doc. No. 20]**.  The Court, having considered the motions,

briefs, relevant law and being otherwise fully informed, finds that Plaintiff's motion for summary

judgment is well-taken and will be **GRANTED** and Claimants' motions to dismiss are not well-

taken and will be **DENIED.**

## BACKGROUND

In this *in rem* forfeiture action, the United States seeks forfeiture of seven vehicles under

18 U.S.C. § 981 on the grounds that they are personal property involved in transactions or

attempted transactions in violation of 18 U.S.C. § 1956 and § 1957, and constitute property

derived from health care fraud offenses, money laundering, racketeering and wire fraud.  Between

1994 and 1998, Shirley A. Jones and Steven L. Jones were the sole shareholders and officers of

Mega-Universal Oxygen and Home Care Services, Inc., a/k/a Universal Oxygen and Hospital

Supply, Inc., ("Mega" or "Universal Oxygen"), a New Mexico corporation that provided durable

medical equipment, supplies and services for home health care.  Mega was an authorized provider

under the New Mexico Medicaid Program, which is financed through federal and state funds.  As

an authorized provider, Mega was permitted to submit electronic claims for payment.

Between January 1, 1994 and November 1997, Mega received payment from the

New Mexico Medicaid program for approximately 150,000 false and fraudulent claims totaling

over $20 million dollars.  During this time period, approximately 90% of Mega's income was

from Medicaid and more than 74% of Mega's Medicaid billings were false and fraudulent.

Claimant Christopher D. Bates was an employee of Mega.  Christopher Bates was hired

through Payday Professional Employees, later Payday Employee Benefits, Inc., ("Payday").

Payday leased employees to Mega, charging Mega for the salaries of the employees and for the

associated costs of providing its services.  Shirley Jones, on behalf of Mega, instructed Payday to

issue payroll checks to Christopher Bates, and to generate W-2's for calendar years 1996 and

1997.  These W-2's stated that Bates' gross salary was $46,734.45 in 1996 and $48,750.00 in

1997.  Shirley Jones, on behalf of Mega, paid Christopher Bates additional income in the amount

of $67,438.72 in 1996 and $56,534.53 in 1997, and concealed the additional income from Payday,

causing Payday to issue false W-2's.

On June 12, 1998, Christopher Bates provided a statement to the FBI in which he

admitted that he knew Shirley Jones was billing for dead people and stated that he felt Shirley

Jones was "fishing for ways to outsmart the billing system."   He also stated that Shirley Jones had

purchased vehicles for just about everyone with whom she was involved, including relatives,

friends, and employees.

The defendant vehicles were seized on or about March 20, 1998, pursuant to federal

seizure warrants.  The United States contends that the defendant vehicles were purchased using

proceeds derived from Shirley Jones, Steven Jones and Mega's health care fraud and racketeering

activities between January 1, 1994 and November 1997.  The United States also asserts that

proceeds from these illegal transactions were used to pay for ongoing repairs and upgrades on the

defendant vehicles.

On or about November 5, 1998, a Federal Grand Jury in Albuquerque, New Mexico,

returned a third superseding indictment in Criminal Case No. 98-251 MV, charging Shirley A.

Jones, Steven Jones, and Mega with violations of 18 U.S.C. § 1962(c) (RICO); 18 U.S.C. § 1343

(Wire Fraud); 18 U.S.C. §§ 1347 and 24 (Health Care Fraud); 18 U.S.C. § 2 (Aiding and

Abetting); 18 U.S.C. § 1956(a)(1)(A)(i) (Money Laundering); 18 U.S.C. § 1957 (Money

Laundering); 18 U.S.C. § 982 (a)(6) (Criminal Forfeiture); 18 U.S.C. § 1963 (RICO Forfeiture);

26 U.S.C. § 7201 (Attempt to Evade and Defeat Tax); 26 U.S.C. § 7206(1) (Making and

Subscribing a False Return); 26 U.S.C. § 7206(2) (Aiding and Assisting in the Preparation of a

False and Fraudulent Return); 18 U.S.C. § 371 (Conspiracy to Attempt to Evade and Defeat

Tax); and 18 U.S.C. § 1518 (Obstruction of Criminal Investigation of Health Care Offenses).  The

third superseding indictment charged Christopher Bates with multiple counts of attempting to

evade or defeat income taxes for calendar years 1996 and 1997, in violation of 26 U.S.C. § 7201,

and conspiring with Shirley Jones to attempt to evade and defeat tax, in violation of 18 U.S.C. §

371.  The third superseding indictment named the defendant vehicles and other property as subject

to forfeiture pursuant to 18 U.S.C. § 982(a)(1),(2),(3), and (6) as property derived from health

care fraud activities.

Shirley Jones subsequently pleaded guilty to charges of health care fraud in violation of 18

U.S.C. § 1347, racketeering in violation of 18 U.S.C. § 1962(c), attempt to evade income tax in

violation of 26 U.S.C. § 7201, obstruction of criminal investigation of health care offenses in

violation of 18 U.S.C. § 1518; wire fraud in violation of 18 U.S. C. § 1343, and multiple counts

of money laundering in violation of 18 U.S.C. § 1957.  On December 26, 2001, the Court

sentenced her to 70 months imprisonment and ordered restitution in the amount of

$20,817,577.86 to the New Mexico Medicaid Program.

Steven Jones pleaded guilty to charges of racketeering, wire fraud and money fraud.  On

December 26, 2001, the Court imposed a sentence of 30 months imprisonment and ordered

restitution in the amount of $20,817,577.86 to the New Mexico Medicaid program.

Christopher Bates pleaded guilty to a charge of attempting to defeat and evade income taxes in violation of 26 U.S.C. § 7201.  On or about December 8, 1999, Christopher Bates was sentenced to 5 years probation and ordered to pay the IRS past taxes due in the amount of $42,814.00, plus interest and penalties.

On January 16, 2001, Shirley Jones, Steven Jones, and Mega/Universal Oxygen entered into a Stipulated Settlement Agreement with the United States in which they forfeited their rights, title, and interest to virtually all of the property indicted and named in the criminal indictment, including the seven vehicles that are the defendant property in this civil forfeiture action.  On May 18, 2001, the United States filed this Complaint for forfeiture *in rem* against the defendant vehicles.

On June 4, 2001, Christopher Bates accepted service of the Verified Complaint and Summons in this case on behalf of himself and Michelle Bates.  On June 18, 2001, Christopher and Michelle Bates filed a *pro se* pleading entitled "Reply and Answer to Summons and Notice of Arrest and Suit Pending."  In this pleading, which is not verified, Christopher and Michelle Bates assert that they have a right to the defendant property as well as to damages because they "were never charged with that crime and we solely own these items out right with no one else claiming ownership of these items."  Christopher and Michelle Bates subsequently filed two motions to dismiss the forfeiture action and the United States filed a motion for summary judgment.

## LEGAL STANDARD

**A.      Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the

benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

**B.      Motion to Dismiss Standard**

The Court may not dismiss a cause of action under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts supporting his or her claim that would entitle him or her to relief. *See, e.g.*,

*H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989).  When considering a

motion to dismiss, the Court must assume as true all well-pleaded facts, and must draw all

reasonable inferences in favor of the plaintiff.  *See Housing Auth. of the Kaw Tribe v. City of

Ponca City,* 952 F.2d 1183, 1187 (10th Cir. 1991).  The issue in reviewing the sufficiency of a

complaint "is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to

offer evidence to support the claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  "[G]ranting

a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate

the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman

Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir. 1989)*,* (quoting

*Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986)).

While a court must construe a *pro se* plaintiff's pleadings liberally, mere conclusory

allegations will not support a claim without supporting factual averments.  *Brown v. Zavaras*,

63 F.3d 967, 972 (10th Cir.1995); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

The court is not obliged to craft legal theories for the *pro se* plaintiff nor may the court supply

factual allegations to support a *pro se* plaintiff's claim for relief.  *See Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991).

**DISCUSSION**

I.       **Standing**

Whether a claimant has standing is "the threshold question in every federal case,

determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498

(1975)).  To contest a governmental forfeiture action, claimants must have standing both under

the statute or statutes governing their claims as well as standing under Article III of the

Constitution. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2nd Cir. 1999); *United

States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998).   The burden of

establishing standing to contest a forfeiture rests upon the claimant.  *Kadonsky v. United States*,

216 F.3d 499, 508 (5th Cir. 2000).

To establish statutory standing in this case, Claimants must comply with Rule C(6) of the

Supplemental Rules for Certain Admiralty and Maritime Claims.  Rule C(6) provides that in an *in

rem* forfeiture action for violation of a federal statute, a claimant must file a verified statement

identifying the interest or right within 30 days after receipt of notice of the complaint and must

serve an answer within twenty days after filing the verified statement.  *See* Rule C(6) of the

Supplemental Rules for Certain Admiralty and Maritime Claims.  The court may extend the time

period for filing the initial claim. *Id*.

In this case, Christopher Bates accepted service of the Verified Complaint and Summons

on behalf of himself and Michelle Bates on June 4, 2001.  The Summons specifically stated that

both a verified claim and an answer were required.  On June 18, 2001, Christopher and Michelle

Bates filed a pleading entitled "Reply and Answer to Summons and Notice of Arrest and  Suit

Pending."   This pleading was not verified and did not specifically respond to the allegations in the

Verified Complaint.

Claimants are proceeding *pro se* and, therefore, their pleadings must be construed liberally.  Liberal construction of *pro se* pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.  The question before the Court is whether Claimants' pleading, when construed liberally, satisfies the fundamental requirements of Rule C(6).

"The purpose of the time restriction in Supplemental Rule C(6) is to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay.  The purpose of the verification requirement is to prevent false claims." *United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1318 (10th Cir. 1994) (quotation and citations omitted).  Claimants' pleading, which was filed within the thirty-day time period required by the rule, timely notified both the Court and the United States that appellant was asserting a claim to the defendant vehicles in satisfaction of Rule C(6).  *See, e.g., United States v. $80,760.00 in U. S. Currency*, 781 F.Supp. 462, 469 (N.D. Tex. 1991) (when the goals underlying Supplemental Rule C(6)'s time restrictions are not thwarted, the court should exercise its discretion to excuse defects in the claim procedure or grant additional time for curing them).

In addition, Claimants' pleading does not state under "oath or solemn affirmation" that Claimants have an interest in the defendant property.  The pleading makes the unsworn assertion that Claimants have a right to the defendant property "[d]o [sic] to the fact that we were never charged with that crime and we solely own these items out right with no one else claiming

ownership of these items."

The United States urges strict compliance with Rule C(6), a construction that denies the Claimants standing for failure to file a verified claim and answer.  Several courts have required strict compliance with Rule C(6).  *See, e.g., United States v. Commodity Account No. 549 54930*, 219 F.3d 595, 598 (7th Cir. 2000) (it is proper for the district court to insist on strict compliance with Rule C(6) to establish standing when special circumstances are absent); *United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir.1986) (district court did not abuse its discretion by requiring strict compliance with Rule C(6) and striking claimant's answer because he did not precede it with a verified claim); *United States v. $288,914 in U. S. Currency*, 722 F.Supp. 267, 270 (E.D. La. 1989) ("In order to have standing to challenge a forfeiture proceeding, a claimant must strictly comply with the pleading requirements of Supplemental Rule C(6)").  Moreover, several courts demand strict compliance with the rule, even when the case involves a *pro se* claimant.  *See, e.g., United States v. Real Property Located at 14301 Gateway Blvd. W.*, 123 F.3d 312, 313 (5th Cir. 1997) (upholding the denial of a *pro se* claimant's request for an extension of time after failing to file a timely verified claim); *United States v. $104,674.00*, 17 F.3d 267, 268-69 (upholding a default judgment against *pro se* claimants who failed to comply with the provisions of Rule C(6));  *United States v. One Dairy Farm*, 918 F.2d 310, 312 (1st Cir. 1990) (appellants lacked standing to contest forfeiture because they failed to file a claim within the time prescribed by Rule C(6)).

In contrast to the strict-compliance approach, other courts interpret pleadings and procedural practices under the Supplemental Rules liberally to ensure that courts have the discretion to decide controversies on the merits when a claimant's petition, while technically

deficient, satisfies the underlying goals of Rule C(6).  *See, e.g., United States v. $80,760.00 in U.S. Currency*, 781 F.Supp. 462, 469 (N.D. Tex. 1991) (interpreting pleadings and procedural practices under the Supplemental Rules liberally ensures that controversies are decided on the merits); *United States v. $9,020.00 in United States Currency*, 30 Fed. Appx. 855, 857 (10th Cir. 2002) (unpublished) ("[T]he oft-cited statement that courts may require strict compliance with Rule C(6) does not negate the liberal construction due *pro se* pleadings."); *United States v. Various Computers & Computer Equip.*, 82 F.3d 582, 585 (3rd Cir. 1996) (denying claimant standing for failure to include a verified statement when such failure did not thwart the goals of Rule C(6) would contradict the time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally); *United States v. One Parcel of Real Prop. with Bldgs.*, 942 F.2d 74, 77 (1st Cir. 1991) (if unverified filing evidences a sufficient interest in the seized property, the district court may treat it as satisfying the verified claim requirement);  *United States v. Real Prop. at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1262 (2d Cir. 1989) (excusing technical noncompliance with procedural rules governing the filing of claims where the claimant made a sufficient showing of interest in the forfeited property).  For example, in *$9,020.00 in United States Currency*, the *pro se* claimant filed neither a verified claim nor an answer but, instead, filed a "Petition for Remission" that "self-verified . . . under penalty of perjury" a claim to the seized funds. *$9,020.00 in United States Currency*, 30 Fed.Appx. at 857-58.  The Tenth Circuit held that, in light of the claimant's *pro se* status and because the claimant's petition satisfied the requirements and underlying goals of Rule C(6), the court should broadly construe the claimant's petition as both a verified claim and an answer.  *Id.* at 859.  This broad interpretation coincides with the Supreme Court's pronouncement that, in the realm of

asset forfeiture, "[t]he dignity of a court derives from the respect accorded to its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits." *Degen v. United States*, 517 U.S. 820, 828 (1996).

Other courts have permitted a claimant to proceed without verification. In *Various Computers*, the claimant, proceeding *pro se*, filed a claim that failed to include a verification. *Various Computers & Computer Equip.*, 82 F.3d at 584. The Third Circuit, relying on equitable principles, allowed the claim to proceed even in the absence of a verification because "[b]oth the court and the [g]overnment were aware of the source of [the claimant's] interest in the property and the basis for his claim of ownership. Thus, the verification would not have added to the authenticity of [his] petition." Similarly, in *One Parcel of Real Property with Buildings*, the First Circuit held that when documents filed by claimant adequately apprised the United States of claimant's claim and the basis upon which that claim rested, there was no abuse of discretion in allowing the case to proceed despite the absence of a verified claim. *One Parcel of Real Prop. with Bldgs.*, 942 F.2d at 77.

In this case, Claimants, who are proceeding *pro se*, are actively defending their claim and both the Court and the United States are aware of the source of the Claimants' interest and the basis for their claim of ownership. Indeed, the defendant vehicles are titled in one or both of Claimants' names and the United States named the Claimants as parties in the Verified Complaint. Under these circumstances, the Court finds that requiring strict compliance with the verification procedures would not further Rule C(6)'s purpose of preventing false claims. Furthermore, Claimants did verify their motion to dismiss. "Where a statute or supplemental rule requires an oath, courts have shown a high degree of consistency in accepting later verification as reaching

back to an earlier, unverified filing." *Edelman v. Lynchburg College*, 535 U.S. 106, 116 (2002)

(citing Supplemental Rule C(6) as an example of such a statute)

Finally, the United States argues that Claimants' pleading fails as an answer because it

does not specifically deny or admit the allegations in the forfeiture complaint.  While Claimants'

pleading does not specifically address the allegations in the forfeiture complaint, it does challenge

the allegations in the United States' complaint, evidence an intent to refute the United States'

case, and assert a counterclaim.  As such, Claimants' pleading, construed liberally, satisfies the

fundamental requirements of an answer pursuant to Rule C(6).

## II.   FORFEITURE

A forfeiture proceeding is an *in rem* proceeding brought against the property seized

pursuant to the legal fiction that the property itself is guilty of a crime or is proceeds of a crime.

*Calero-Toledo v. Pearson Yacht Leasing Co*., 416 U.S. 663, 680-84 (1974).  Under

18 U.S.C. § 983(c)(1), the United States bears the burden of proof "to establish, by a

preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c)(1).

If the United States can make this showing, the burden shifts to the claimants to produce facts to

demonstrate by a preponderance of the evidence that the factual predicate for forfeiture does not

exist, or that they have a valid defense to forfeiture, such as being an innocent owner.  *Id*. at

§ 983(d).  Construing *pro se* pleadings liberally, the Court considers Claimants' motions to

dismiss as asserting both that the United States' forfeiture claim is not supported by a

preponderance of the evidence and that Claimants are innocent owners.

The United States seeks forfeiture of the defendant vehicles under two independent

theories.[1]  First, the United States contends that the defendant vehicles are subject to forfeiture

under 18 U.S.C. § 981(a)(1)(A) as property "involved in" a money laundering offense.  Second,

the United States contends that the defendant vehicles are subject to forfeiture under

18 U.S.C. § 981(a)(1)(C) as the "proceeds" of health care fraud.

### A.  18 U.S.C. § 981(a)(1)(A)

The United States seeks forfeiture of the defendant vehicles pursuant to

18 U.S.C. § 981(a)(1)(A) as property involved in money laundering in violation of either

18 U.S.C. § 1957 or 18 U.S.C. § 1956.  Section 981(a)(1)(A) provides for forfeiture to the

United States of "[a]ny property, real or personal, involved in a transaction or attempted

transaction in violation of . . . section 1956 or 1957 of this title, or any property traceable to such

property."  Section 1957 prohibits monetary transactions "in criminally derived property that is

of a value greater than $10,000 and is derived from specified unlawful activity."  The statute

defines a "monetary transaction" as "the deposit, withdrawal, transfer, or exchange, in or affecting

interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a

financial institution . . .."  18 U.S.C. § 1957(f)(2).  The term "criminally derived property" means

"any property constituting, or derived from, proceeds obtained from a criminal offense." *Id*. at §

1957(f)(3).

It is undisputed that money obtained from a "specified unlawful activity"--health care

fraud and wire fraud--was deposited in Mega's Bank of America account.  A transaction

involving funds on deposit at a financial institution insured by the Federal Deposit Insurance

---

[1]  The United States has conceded to the return of Defendant Item 7, a 1975 Porsche, and is only seeking summary judgment against Defendant Items 1-6.  Subsequent references to defendant vehicles in this opinion refer only to Defendant Items 1-6.

Corporation is sufficient to meet the interstate commerce requirement under § 1956. *United States v. Kunzman*, 54 F.3d 1522, 1527 (10th Cir. 1995).

The United States has provided business records, checks, and declarations from Federal Bureau of Investigation and Internal Revenue Service agents demonstrating that the defendant vehicles have a value greater than $10,000.00[2] and were purchased with funds from Mega's Bank of America account.  The United States' evidence establishes the following:

**Item 1:  1997 Chevrolet Pickup Truck.**  Item One was purchased on or about August 8, 1997, from Casa Chevrolet for $35,235.48.  A Bank of America cashier's check drawn on Mega's account in the amount of $15,000, dated August 18, 1997, was used for the down payment to Casa Chevrolet.  The remaining amount was financed by Christopher Bates through First Security Bank.  A second cashier's check dated August 13, 1997, in the amount of $20,235.48, drawn on Mega's account at Bank of America, paid the balance owed to First Security Bank.[3]  Thus, although Item One was titled in Christopher Bates' name, and Christopher Bates applied for a loan on this vehicle, the United States has provided evidence that the funds that paid both the down payment and the lienholder on the loan obtained by Christopher Bates came from Mega's account at Bank of America.

---

[2]  Although the ATV's were valued at less than $10,000 individually, they were purchased collectively with one check that exceeded $10,000.00.

[3]  The dates on the Untied States' evidence supporting this transaction are puzzling.  The United States asserts that the vehicle was purchased on or about August 7, 1997, that the down payment was paid on August 18, 1997, and the balance of the loan was paid on August 13, 1997.  Christopher Bates has provided a receipt from Casa Chevrolet for a $15,000 down payment that is dated August 7, 1997.  The date on the receipt provided by Christopher Bates is consistent with the timing of the transaction.  This discrepancy is inconsequential, however, because the August 7, 1997 receipt provided by Christopher Bates indicates on its face that the $15,000 payment came from "Christopher Bates/Universal Oxygen."

**Items 2, 5 and 6.** These three vehicles were titled in the name of "Shirley Jones or Christopher Bates." Applicable New Mexico law provides that only one person's signature is needed to assign the interest in such titled vehicles to another party. *See* New Mexico Motor Vehicles Division Manual (providing that when the owners' names on the title are joined by the word "or," only one signature is required to apply for title, to assign or encumber the vehicle). In the Stipulated Settlement Agreement, Shirley Jones forfeited all interest in these vehicles to the United States. Consequently, neither Christopher Bates nor Michelle Bates has any remaining interest in Items 2, 5 and 6.[4]

**Item 3: 1993 Chevrolet K15 Suburban.** The 1993 Suburban was purchased on September 26, 1997, for $16,152.80. The buyer's invoice was in Christopher Bates' name and the vehicle was titled in the name of "Christopher or Michelle Bates." Receipts and check records provided by the United States establish that Mega Universal Oxygen paid for the vehicle in three separate payments: a $500 deposit on September 26, 1997; a second deposit of $7,500 on October 2, 1997; and the balance of $8,152.80 on October 8, 1997. Christopher Bates' name was on the receipt for the $8,152.80 payment; however, the Bank of America cashier's check in the amount of $7,900.00, which comprised almost all of the final payment, was drawn from the account of Universal Oxygen.

**Item 4: 1988 GMC Show Truck.** This vehicle was purchased from Donald Cowan for

---

[4] Claimants contend that Bobby J's Yamaha incorrectly had the titles for the ATV's issued jointly in both Shirley Jones' and Christopher Bates' names when Ms. Jones and Mr. Bates actually purchased their ATV's separately. Claimants, however, have not come forward with any evidence in support of their assertion that the ATV's were mistitled or any evidence that Christopher Bates paid for any of the ATV's. In contrast, the United States has provided evidence showing that a check issued by Universal Oxygen Services was credited toward the purchase of all the ATV's and that the ATV's were titled jointly.

$10,000.  A Bank of America cashier's check dated May 30, 1996, in the amount of $10,000, drawn on the account of Universal Oxygen Services paid for the truck.  The truck was titled in the name of "Christopher Bates or Michelle Bates."  The United States has also presented evidence that all work performed on the truck was paid for by Universal Oxygen.  In 1997 alone, Universal Oxygen paid $61,649.39 from its health care business account to pay for upgrades to the show truck as well as to other vehicles titled in Christopher Bates' name.[5]

**Item 7:  1975 Porsche**.  The United States has agreed to dismiss the forfeiture action on this vehicle.  Accordingly, the Court will order the United States to return this item to Claimants.

The United States has come forward with evidence that Shirley Jones engaged in health care fraud, that proceeds from this health care fraud were deposited in Mega's Bank of America account, that funds from this account were used to purchase the defendant vehicles, and that the defendant vehicles are valued at $10,000.00 or more.  Based on this evidence, the Court finds that the United States has met its burden of demonstrating by a preponderance of the evidence that the defendant vehicles are subject to forfeiture under § 981(a)(1)(A) as property "involved in" money laundering.[6]  *See, e.g., U.S. v. 1988 Oldsmobile Cutlass Supreme 2 Door,* 983 F.2d 670, 675 (5th Cir. 1993) (bank records, documentation from car dealerships, and criminal convictions for structuring currency transactions to evade reporting requirements satisfied government's burden

---

[5]  Claimants have presented unauthenticated evidence purporting to show that Universal Oxygen paid for the modifications to the show truck in its capacity as a sponsor of the truck. This fact, even if proven, does not negate the fact that the truck was purchased with funds from Mega's Bank of America account.

[6]  Because the Court has found that the defendant vehicles are subject to forfeiture under § 981 (a)(1)(A) as property "involved in" money laundering, the Court need not analyze whether the vehicles are also subject to forfeiture under § 981 (a)(1)(C) or under a facilitation theory.

in civil forfeiture proceeding of showing probable cause to institute forfeiture action).[7]   The burden now shifts to the Claimants to demonstrate that the defendant vehicles are not subject to forfeiture, either because the factual predicate for forfeiture has not been met or because Claimants are innocent owners.

With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "'innocent owner' means a person who, at the time that person acquired the interest in the property-- (i) was a bona fide purchaser or seller for value . . . and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A).  Claimants bear the burden of proving that they are innocent owners by a preponderance of the evidence.  *Id.* at § 983(d).

Claimants make a number of arguments in opposition to the forfeiture, none of which has merit.[8]  First, Claimants contend that Mega had both legitimate and illegitimate funds in its Bank of America account and the United States has not shown that the exact funds used to purchase the defendant vehicles were from Mega's illegal activity.[9]   The fact that funds from an account containing both earnings from legitimate business activities and illegal proceeds from health care fraud were used to purchase the vehicles does not alter the forfeitability of the vehicles.  While the

---

[7]  Prior to enactment of the Civil Asset Forfeiture Act, which applies to forfeiture actions commenced  on or after August 23, 2000, the government's burden in a civil forfeiture action was to establish "probable cause" that the property was subject to forfeiture.

[8]  Claimants also seek the return of certain studio equipment seized from Shirley Jones' home.  Forfeiture of that equipment, however, is not being sought in this action and cannot be addressed by the Court.

[9]  During the relevant time period, approximately 90% of Mega's income was from Medicaid and more than 74% of Mega's Medicaid billings were false and fraudulent. Thus, approximately 33.4% of Mega's income was from legitimate business activities.

Tenth Circuit has not specifically addressed this question, other courts have held that property purchased with commingled funds is subject to forfeiture in its entirety because the forfeiture is triggered by the purchase of the property, which was a prohibited money laundering activity. Thus, the entire purchased property is involved in the money laundering transaction, not merely the funds traceable to the underlying fraudulent activity. *See United States v. Real Property Known as 1700 Duncanville Road*, 90 F.Supp.2d 737, 741 (N.D. Texas 2000) ("Since the purchase of the subject properties was itself a money laundering transaction under section 1957, it is immaterial that claimants may have also used untainted funds for its purchase."); *United States v. One Single Family Residence*, 933 F.2d 976, 981-82 (11th Cir. 1991) (real estate purchased and improved with legitimate funds and proceeds from illegal drug activity forfeited in its entirety); *United States v. One 1987 Mercedez-Benz 300E*, 820 F.Supp. 248, 252 (E.D. Va. 1993) (car purchased with legitimate and illegitimate funds is subject to forfeiture under § 1957 because the entire vehicle was involved in money laundering). By using the vehicle purchases as a means to launder the proceeds of their health care fraud, the Joneses subjected to forfeiture any legitimate funds involved in the purchase of these vehicles.

Second, Claimants contend that the forfeiture constitutes double jeopardy since Christopher Bates previously pleaded guilty to income tax evasion on some of the funds used to buy the defendant vehicles. In *United States v. Ursery*, the Supreme Court held that "*in rem* civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." *United States v. Ursery*, 518 U.S. 267, 292 (1996). Consequently, the Double Jeopardy Clause is not violated by forfeiture of the defendant vehicles.

Third, Claimants assert that the defendant vehicles were all financed by Claimants and

were not paid for with cash or ill-gotten gains from Shirley Jones.  As support for this assertion,

Claimants have submitted unauthenticated printouts from the New Mexico Department of Motor

Vehicles showing that (1) the 1988 Show Truck is titled in the name of Christopher or Michelle

Bates and had a lien against it by Beneficial New Mexico, Inc., from 7/30/1997 to 7/18/2002; (2)

the 1997 Chevy Truck is titled in Christopher Bates' name and had a lien against it by Assoc Fin

SVS Co. of NM for the period from 12/12/1997 to 1/12/2002; and (3) the 1993 Suburban is titled

in the names of Christopher or Michelle Bates and had a lien from American General Finance

from 2/23/1998 to 2/13/2000.  This evidence demonstrates only that the defendant vehicles were

titled in one or both of Claimants' names and that Claimants used the vehicles as security for

subsequent loans.  Neither of these facts refutes the United States' evidence that the vehicles were

purchased with funds from Mega's Bank of America account.

In the alternative, Claimants contend that Shirley Jones loaned them the money for the

vehicles.  In support of this assertion, Claimants have submitted three unauthenticated receipts

purportedly from Shirley Jones.  The first receipt, dated June 3, 1996, states that Shirley Jones

received $10,000 from Chris Bates as payment in full for "money borrow for vehicle."  The

second receipt, dated March 1, 1998, states that Shirley Jones received $25,000 from Chris Bates

as payment in full for "Chev. Dually truck."  The third receipt, dated September 1997, states

"Was owed Chris $17,000.  Exchange Chris Bates 1984 Toyota truck.  I owed him for that truck

took monies &  purchased the 1993 Suburban."

Claimants' unauthenticated receipts are insufficient to establish that Claimants are bona

fide purchasers of the vehicles for value.  *See Orr v Bank of America, NT & SA*, 285 F.3d 764,

773 (9th Cir. 2002) (unauthenticated documents cannot be considered in a motion for summary

judgement).  Furthermore, Claimants have not supplied, and the United States was unable to

locate, any corroborating evidence for the alleged loans.  IRS Revenue Agent Barry Wilson

compared the purported receipts against the business and financial records of Christopher Bates,

Mega Universal and Shirley Jones from the period between January 1996 and January 1998 and

found no documentary evidence that these alleged loans existed or that Christopher Bates made

any such payments to Shirley Jones.  There are no corresponding withdrawals from Christopher

Bates' bank account or deposits in Shirley Jones' or Mega's accounts.  Agent Wilson also

determined that Christopher Bates did not have a source of funds to make the payments

represented by the receipts.  In addition, Agent Wilson found that the receipts were not consistent

with other receipts issued by Shirley Jones/Mega Universal, that the receipts were not among the

business records obtained by the United States from Mega Universal and Shirley Jones, and that

the numbering on the receipts appears fabricated.  Furthermore, as noted in Agent Wilson's

declaration, it is not credible to assert that a 13-year-old truck would be worth $17,000.00.

     Lastly, Claimants assert that the defendant vehicles were improperly seized.  Specifically,

Claimants assert that the government agents did not have seizure warrants for the vehicles and

that the government agents did not have probable cause to enter and search their home.

Claimants provide no evidence in support of these assertions.  The United States has provided the

Court with copies of the criminal seizure warrants issued on March 20, 1998, for the defendant

vehicles.  The United States has also provided a copy of the seizure report and declarations from

the government agents who seized the property, all of which assert that no search of the Bateses'

home occurred during the seizure of the defendant vehicles.

     Claimants have failed to come forward with admissible evidence that the funds for the

purchase of the defendant vehicles came from a legitimate source or that Claimants were bona fide purchasers of the vehicles for value.  Claimants' failure to demonstrate that they are bona fide purchasers of the vehicles for value combined with the fact that Christopher Bates was aware of the Joneses' illegal activities, prevents Claimants from being "innocent owners" of these vehicles under 18 U.S.C. § 983(d)(3)(A).  18 U.S.C. § 983(d)(3)(A) ("'innocent owner' means a person who, at the time that person acquired the interest in the property (i) was a bona fide purchaser or seller for value . . . and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture."); *see also One Single Family Residence*, 933 F.2d at 981 ("Innocent owners are those who have no knowledge of the illegal activities and who have not consented to the illegal activities.").  Claimants have failed to demonstrate that the statutory predicates for forfeiture have not been met or that Claimants are innocent owners and the United States is entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Claimants' Motion to Dismiss Forfeiture Claim, filed January 16, 2002, **[Doc. No. 15]** and Claimants' Second Motion to Dismiss Forfeiture Claim, filed April 7, 2004, **[Doc. No. 18]** are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment Regarding the Right, Title, and Interest of Claimants Chris Bates and Michelle Bates (Items 1 Through 6), filed April 28, 2003, **[Doc. No. 20]** is hereby **GRANTED**.  All right, title and interest in defendant vehicles (Items 1 through 6) is hereby forfeited to the United States.

**IT IS FINALLY ORDERED** that Defendant Item 7:  1975 Porsche, VIN 9115200226, be returned to Claimants.

The parties shall bear their own costs.

Dated this 30th day of September, 2004.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
        Stephen R. Kotz, Esq.

Attorneys for Claimants:
        Christopher Bates, *pro se*
        Michelle Bates, *pro se*